J-S42033-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRUCE BICKEL | : | |
| | : | |
| Appellant | : | No. 329 WDA 2022 |

Appeal from the PCRA Order Entered February 11, 2022
In the Court of Common Pleas of Crawford County
Criminal Division at No(s):  CP-20-CR-0000213-2017

BEFORE:   BOWES, J., OLSON, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED: APRIL 28, 2023**

Bruce Bickel, *nunc pro tunc*,[1] appeals from the post-hearing order

denying relief under the Post Conviction Relief Act ("PCRA"). **See** 42 Pa.C.S.A.

§§ 9541–9546. On appeal, Bickel contends that his trial counsel was

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] As background, the lower court issued the appealed-from order without Bickel being present. In looking at the order's contents, it does not "advise [Bickel] of the right to appeal from [that order] disposing of the petition [nor] of the time limits within which the appeal must be filed." Pa.R.Crim.P. 908(E).

Bickel's *nunc pro tunc* counseled notice of appeal from the February 11, 2022 order was filed on March 21, 2022, exceeding the permitted filing period. **See** Pa.R.A.P. 903(a) (thirty days). Despite the untimeliness of this notice, we conclude that there has been a breakdown in the court's operation given the infirmity associated with the appealed-from order, i.e., the absence of information regarding its appealability. Consequently, we decline to quash the appeal. **See Commonwealth v. Braykovich**, 664 A.2d 113 (Pa. Super. 1995) (allowing for this Court to permit an enlargement of the filing period in situations that involve a breakdown in the processes of the lower court).

ineffective, that his guilty plea is void, and that his sentence is illegal.

Separately, PCRA counsel has filed an **Anders**[2] brief, asserting that an

examination of the record has uncovered no non-frivolous issues to pursue in

this appeal.[3] After thorough review, we affirm the PCRA court's order and

additionally grant counsel's application to withdraw.

As cogently summarized by the court:

> This case has a complex and lengthy procedural history, but
> essentially arises out of two complaints at two separate dockets
> regarding [Bickel's] alleged sexual abuse of two children, F.A.S.
> and J.D.B. On September 22, 2016, while [Bickel] was being
> interviewed by Meadville City Police regarding the allegations
> involving J.D.B. … he opened his cell phone and showed Meadville
> City Detective Justin Bailey pornographic pictures involving
> minors. As a result, [Bickel's] phone was taken and placed in
> evidence at the Meadville City Police Department, and he was
> arrested on the sexual abuse charges involving J.D.B., as well as
> charges involving possession of child pornography.
>
> At [the present] docket, Detective Sergeant Stefanucci … obtained
> a search warrant on January 11, 2017 for [Bickel's] cell phone,
> based on F.A.S.'s allegations that he had taken pornographic

---

[2] **Anders v. California**, 386 U.S. 738 (1967).

[3] We note that counsel's brief is mistakenly labeled as an **Anders** brief. **Anders** applies only when counsel seeks to withdraw from representation on direct appeal. As counsel, here, attempts to withdraw in Bickel's collateral appeal, **Turner** and **Finley** apply. **See Commonwealth v. Widgins**, 29 A.3d 816, 817 n.2 (Pa. Super. 2011) (citing **Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988) (*en banc*)). Notwithstanding that error, counsel's mistake is not fatal to an application to withdraw. We have repeatedly held that "because an **Anders** brief provides greater protection to a defendant, this Court may accept an Anders brief in lieu of a **Turner/Finley** letter." **See, e.g.**, **id**. (citation omitted). As such, we are inclined to accept counsel's **Anders** brief and correspondingly evaluate whether it substantially complies with the **Turner/Finley** criteria. **See id**., at 819.

pictures of her with the cell phone. The phone was then sent to the Pennsylvania State Police (hereinafter "PSP") for inspection. On February 2, 2017, PSP prepared a report detailing the results of the inspection of [Bickel's] cell phone, which found several photos of both male and female juveniles, ranging in age from toddler to teenager. [Bickel] was subsequently arrested regarding the sexual abuse allegations made by F.A.S. and possession of child pornography.

[Bickel] was initially represented by Attorney Wayne Hundertmark at both dockets. Attorney Hundertmark withdrew his appearance at the [current] docket when Attorney Gary Kern entered his appearance on July 10, 2017. … Attorney Kern represented [Bickel] … through sentencing.

[Ultimately], [Bickel] entered a guilty plea [at the 2017 case] … to ten counts of Sexual Abuse of Children – Possession of Child Pornography pursuant to 18 Pa.C.S.A. § 6312(d)(1). … The Commonwealth and Attorney Kern also negotiated an agreed-upon sentence[. The other charges Bickel faced, such as, *inter alia*, rape of a child and involuntary deviate sexual intercourse with a child were *nolle prossed* as a result of this plea.]

On May 3, 2019, [Bickel] was sentenced … to the agreed-upon sentence of five to twenty-five years of incarceration[.] Prior to sentencing, Attorney Kern went over the ["]Appellate Rights of Defendant [a]fter Sentencing["] with [Bickel] to ensure that he understood his post-sentence and appellate rights after entry of a guilty plea.

Memorandum and Order, 11/17/21, at 1-2. Bickel did not file a direct appeal.

Approximately eleven months after this sentence was imposed, Bickel, *pro se*, filed the present PCRA petition. The court appointed Bickel with counsel, who thereafter submitted an amended petition.

The court conducted an evidentiary hearing on August 23, 2021, and after hearing the testimony of both Bickel and Attorney Kern, found no merit to any of the issues advanced in either Bickel's *pro se* or counseled petition.

The court reached this determination contemporaneous with its issuance of an exhaustive memorandum and order evaluating all of the outstanding PCRA issues. On February 10, 2022, the court entered an order dismissing Bickel's PCRA petition and as explained, *supra*, Bickel filed a counseled notice of appeal *nunc pro tunc* from this order. Thereafter, the relevant parties complied with their respective obligations under Pennsylvania Rule of Appellate Procedure 1925. As such, the matter is ripe for review.

Before we begin any substantive analysis of Bickel's claims, we must address the outstanding motion to withdraw filed by Bickel's PCRA counsel. To withdraw from PCRA representation, counsel must competently and independently review the record. That review requires: (1) a "no-merit" letter by PCRA counsel detailing the nature and extent of his review; (2) a "no-merit" letter by PCRA counsel listing each issue the petitioner wished to have reviewed; (3) PCRA counsel's explanation, in the "no-merit" letter, as to why the petitioner's issues are meritless; (4) independent review of the record by the PCRA or appellate court; and (5) agreement by the PCRA or appellate court that the petition was meritless. *See Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa. 2009) (quoting *Finley*, 550 A.2d at 215). In addition to these five precepts,

> PCRA counsel who seeks to withdraw must contemporaneously serve a copy on the petitioner of counsel's application to withdraw as counsel, and must supply to the petitioner both a copy of the "no-merit" letter and a statement advising the petitioner that, in the event that the court grants the application of counsel to withdraw, he or she has the right to proceed *pro se* or with the

assistance of privately[-]retained counsel.

***Commonwealth v. Friend***, 896 A.2d 607, 614 (Pa. Super. 2006).

Despite some irregularities,[4] there has been substantial compliance with ***Turner***/***Finley*** and ***Friend***. Counsel's application indicates that "[t]he undersigned has undertaken a thorough and conscientious review of the entire record in this matter." Application to Withdraw as Counsel, ¶ 2. Counsel's brief maintains the same: "[a]fter a thorough and careful review of the entire record in this case … [.]" ***See, e.g***., ***Anders*** Brief, 16, 18. In addition, the application to withdraw, ***Anders*** brief, and letter advising Bickel of his rights going forward were designated as having been served upon him. ***See*** Application to Withdraw as Counsel, ¶ 6. Relatedly, Bickel was advised of his ability to proceed *pro se* or with private counsel, and Bickel's acknowledgement of this advisement is evident through a responsive/subsequent *pro se* filing.[5]  In

---

[4] For instance, originally, counsel included language suggesting that Bickel's ability to proceed *pro se* or with privately retained counsel was predicated on this Court granting counsel's application to withdraw. ***See*** Application to Withdraw as Counsel, Ex. A. However, after being ordered to do so, counsel corrected this error by, *inter alia*, sending another letter to Bickel serving to apprise him of his immediate right to proceed *pro se* or with private counsel. Moreover, independent of this misstatement, counsel did not append a copy of Bickel's statement of errors contained of on appeal to the ***Anders*** brief. ***See*** Pa.R.A.P. 2111(d).

[5] As best as can be discerned, Bickel's *pro se* and handwritten submission does not raise any issues that are independent from those contained in the counseled brief. In fact, Bickel's *pro se* statement of questions involved contained in his most recent filing only includes three substantive issues, whereas the ***Anders*** brief contains an additional ineffective assistance of
*(Footnote Continued Next Page)*

addition, counsel's brief, acting as the "no-merit" letter, outlines the issues Bickel seeks review of and concomitantly, in a well-developed manner, explains why those issues are, in fact, meritless.

As counsel has substantially complied with the procedural requirements for withdrawal, we ascertain whether there is any validity to any of the claims contained either within the brief or raised by Bickel in a *pro se* capacity.

Our standard of review for an order that dismisses a PCRA petition requires this Court to dually consider whether the PCRA court's determination is supported by evidence of record and, too, free of legal error. ***See Commonwealth v. Burkett***, 5 A.3d 1260, 1267 (Pa. Super. 2010) (citation omitted). However, we are limited to the PCRA court's findings and evidence of record, which are viewed in the light most favorable to the prevailing party at the lower court level. ***See id***. To the extent the PCRA court has made credibility determinations, if the record supports those conclusions, they are binding on this Court. ***See Commonwealth v. Widgins***, 29 A.3d 818, 820 (Pa. Super. 2011).

The ***Anders*** brief raises four issues:

1. Was trial counsel ineffective for being unwilling to prepare for or go to trial and also failing to locate or speak with two potential trial witnesses that Bickel identified to counsel?

_____

counsel allegation, which, in the aggregate, amounts to four issues. Notwithstanding that disparity, later in Bickel's *pro se* filing, four discrete issues are contained in his argument summary section. These four issues parallel those identified in counsel's ***Anders*** brief.

2. Was trial counsel ineffective for not discussing case or defense strategy with Bickel, thereby unlawfully inducing him to enter into a guilty plea?

3. Is Bickel's guilty plea void where he did not take an oath or affirmation prior to its entry?

4. Is Bickel's sentence illegal where, in addition to his term of incarceration, he was required to pay a fine, but no inquiry was made into his ability to pay said fine?

*Anders* Brief, at 5-6.

As the first two arguments contest counsel's effectiveness, we start from the position that "counsel is presumed to be effective and the burden of demonstrating effectiveness rests on [the] appellant." **Commonwealth v. Ousley**, 21 A.3d 1238, 1244 (Pa. Super. 2011) (citation omitted). Specifically, for an ineffectiveness claim to have validity,

> [a] petitioner must show (1) that the underlying claim has merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) but for the errors or omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. The failure to prove any one of the three prongs results in the failure of petitioner's claim.

*Id*. (citation omitted).

As these ineffectiveness challenges follow Bickel having accepted a guilty plea:

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused [an] appellant to enter an involuntary or unknowing plea. In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea.

**Commonwealth v. Mitchell**, 105 A.3d 1257, 1272 (Pa. 2014) (citations

- 7 -

omitted); *see also Commonwealth v. Kpou*, 153 A.3d 1020, 1023 (Pa. Super. 2016) (establishing that "a guilty plea must be knowingly, voluntarily and intelligently entered[]") (citation omitted).

Similar to the presumption that counsel was effective, "Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise." *Commonwealth v. Jabbie*, 200 A.3d 500, 505 (Pa. Super. 2018). Furthermore, "one is bound by one's statements made during a plea colloquy, and may not successfully assert claims that contradict such statements." *Commonwealth v. Muhammad*, 794 A.2d 378, 384 (Pa. Super. 2002).

Bickel first avers that his counsel was ineffective for failing to locate two witnesses: (1) a PSP trooper named Danielle; and (2) F.A.S.'s mother.

As to the former witness, Bickel believes that F.A.S. and that trooper had a conversation, but was unaware of what had been discussed between them. Bickel concedes that he "was unable to provide Attorney Kern with the trooper's last name." *Pro Se* Response to *Anders* Brief, at 24. Bickel also admits that he has "no idea what [T]rooper Danielle and F.A.S. may have discussed and could not verify their conversation[.]" *Id*., at 25.

At the PCRA hearing, Attorney Kern stated that he called the local PSP barracks and "asked to speak to a Trooper Danielle[,]" but no one by that name worked at that facility. PCRA Hearing, 8/23/21, at 136. Further inquiry led to the discovery that there had been a Danielle working at that barracks

at some point, but it was believed that she had left the force. *See id*. Attorney Kern then went onto Facebook and sent a message to a former PSP trooper by the name of Danielle, but did not receive a response. *See id*.

With Bickel having no specific identifying information (other than a first name) about Trooper Danielle and, too, with him having no clear concept of whether this Trooper's testimony would be in any way relevant should this case have gone to trial, Bickel has not satisfied any of the three ineffective assistance prongs. Stated succinctly, Bickel has not demonstrated that there is underlying merit to the notion that this Trooper's testimony would have been in any way valuable at trial, Attorney Kern's actions were responsive to Bickel's directives and clearly reasonable in tracking this Trooper down based on the information that had been provided, and finally, Bickel has failed to demonstrate that counsel actually finding the Trooper would have yielded any sort of different result. Therefore, this claim warrants no relief.

As to F.A.S.'s mother, Bickel suggests that "F.A.S.'s mother had information that was valuable to his case and [therefore] wanted her subpoenaed." *Pro Se* Response to **Anders** Brief, at 26.

Conversely, Attorney Kern believed that any information gleaned from this individual would be unlikely "to lead to any relevant or admissible information[.]" PCRA Hearing, 8/23/21, at 138. Essentially, to Attorney Kern, Bickel wanted F.A.S.'s mother investigated for unrelated allegations of poor parenting. **See id**. (providing an anecdote about how F.A.S.'s mother asked

Bickel to watch her children while she went to meet up with a man in New York for several days). However, Bickel's desired questioning "didn't go to any of the elements of the crime" and "[w]ould not have changed the outcome of the case[.]" *Id*., at 138-39.

Bickel's *pro se* filing fails to demonstrate that there would have been any merit to obtaining the testimony of F.A.S.'s mother. Moreover, it is entirely unclear what kind of information, relevant to the elements or defenses of the crimes in which he had been charged, Bickel thinks he could have extracted from F.A.S.'s mother. To that point, Bickel acknowledges that he and Attorney Kern "discussed why [the Attorney] did not feel that F.A.S.'s mother would be an appropriate witness." *Pro Se* Response to **Anders** Brief, at 27. Even through the most generous reading of his *pro se* brief, which we consider in tandem with the **Anders** brief, Bickel has presented absolutely nothing to show that counsel's inaction in not subpoenaing F.A.S.'s mother was unreasonable, especially in light of the fact that Bickel and Attorney Kern had a complete discussion on the matter. Furthermore, without Bickel framing the type of information he could have expected to receive from the mother's testimony, there is no indicia that anything obtained could have changed proceedings. Therefore, Bickel's claim of ineffective assistance necessarily fails.

Bickel's other ineffective assistance of counsel claim contends that Attorney Kern failed to discuss either trial strategy or potential defenses with

him.

At the hearing, Bickel testified that Attorney Kern apprised him of the elements of the charges he was facing. *See* PCRA Hearing, 8/23/21, at 37-38. However, Bickel avers that Attorney Kern stated there were no defenses to any of those crimes. *See Pro Se* Response to **Anders** Brief, at 28.

Bickel believed he had a defense insofar as he was "helping a minor child prove that she … and her two … siblings were being molested and photographed by F.A.S.'s half brother." **Id**. Bickel also contends that as a member of the Pennsylvania State Fire Police and/or in his position as an unlicensed private investigator, he could investigate crimes of this nature. **See id**. Additionally, Bickel suggests that Attorney Kern did not explain to him "the Good Samaritan Laws." **Id**., at 29.

Attorney Kern stated that he did, in fact, have conversations with Bickel about various defenses that he could have raised, specifically as it pertained to the possession of child pornography charges. **See** PCRA Hearing, 8/23/21, at 130. After conducting legal research, Attorney Kern had determined that relevant child pornography-related defenses were inapplicable if that material was being possessed for any reason other than a "good-faith, *bona fide*, medical, scientific, or law enforcement function." **Id**. Attorney Kern conveyed to Bickel that such defenses were likely inapplicable to his situation. **See id**. However, Attorney Kern was still prepared to vigorously defend his client, should the case have gone to trial. **See id**., at 134 (testifying that Attorney

- 11 -

Kern would have argued that Bickel "was operating under a subjective believe that he was engaging in some sort of professional or semi professional investigation[.]"). Attorney Kern was also capable of presenting defenses to the other sex-related charges Bickel was facing given that, *inter alia*, F.A.S. "had given conflicting statements." **Id**.

Bickel concedes that "Attorney Kern did discuss some trial and defense strategy with [him] and that [he] understood part of said discussions." *Pro Se* Response to **Anders** Brief, at 30. Bickel also writes that "[i]t appears as Attorney Kern may have acted reasonably by reviewing and researching part of Bickel's desired defense as well as other potential defenses into both the possession of child pornography charges and the charges involving sexual conduct." **Id**., at 31. With all of that said, however, Bickel asserts that Attorney Kern failed to discuss "all trial or all defense stateg[ies] with arguable merit." **Id**. Specifically, "Attorney Kern did not tell Bickel about The Good Samaritan Immunity Law, until the PCRA hearing while he was testifying on the stand." **Id**.

Bickel does not elaborate on what he means by "The Good Samaritan Immunity Law" and such a reference did not come up during the PCRA hearing. To the extent that "Law" is analogous to the aforementioned defenses for the possession of child pornography, Attorney Kern made it clear to him that such a defense was likely inapplicable, as Bickel's actions were almost certainly not part of a *bona fide* law enforcement action, regardless of the fire

or investigation-related titles Bickel may possess. Attorney Kern acted reasonably in reviewing Bickel's desired defense, but it led to a determination that such a defense would almost certainty lead to no success. Therefore, as counsel fully informed Bickel of the situation that he faced and had a reasonable basis to discuss the inapplicability of Bickel's desired defense, Bickel has failed to demonstrate that he suffered from ineffective assistance of counsel.

In his next issue, Bickel "desires to argue that his plea of guilty is void" because "he did not take an oath prior to the entry of his guilty plea." *Pro Se* Response to ***Anders*** Brief, at 31. Bickel then quotes a passage in the Bible. ***See id***., at 32. However, Bickel concedes that he testified "to the best of his ability during his plea colloquy with the trial court[.]" ***Id***., at 34.

As the present matter involves PCRA proceedings, which are limited in scope, Bickel has failed to demonstrate which statutory basis for relief he seeks. ***See*** 42 Pa.C.S.A. § 9543(a)(2) (outlining the seven argumentative bases for a PCRA petition). Other than his citation to the Bible, Bickel has not provided any authority to show that this claim is cognizable under the PCRA.[6] Even through our own independent research, we have not found any specific ground for such a contention to warrant relief under the PCRA. As such,

---

[6] Bickel baldly suggests that "his conviction or sentence was a direct result of him not taking such an oath[,]" *Pro Se* Response to ***Anders*** Brief, at 34, possibly as some sort of illegal sentence/jurisdictional defect, but does not elaborate as to how that could fit under any of the PCRA's auspices.

Bickel's claim is without merit.

Bickel's last argument suggests that the trial court failed to make a pre-sentence inquiry into his ability to pay a fine, which amounted to $100 and court costs. Bickel cites to 42 Pa.C.S.A. § 9726(c) and **Commonwealth v. Ford**, 217 A.3d 824 (Pa. 2019), for this proposition and considers his sentence to be illegal.

Bickel admits that prior to sentencing him to this fine, "the trial court reviewed Bickel's presentence report, which contained information regarding [his] financial status and ability to pay." *Pro Se* Response to **Anders** Brief, at 35 (record citations omitted). Additionally, "Attorney Kern highlighted [to the court] and corrected various aspects of Bickel's presentence report, including information regarding a hauling business which Bickel claimed was never profitable for him[.]" **Id**. Furthermore, the presentence report stated that Bickel was on Social Security Disability. Despite all of this, Bickel insinuates that the court had an inaccurate picture of his finances and that the court should have conducted an ability-to-pay analysis.

Bickel's argument does not provide any indication that the court somehow relied upon the wrong economic information when it imposed a fine against him. Also, assuming they contain sufficient information, Courts are allowed to use presentencing investigation reports to satisfy the requirements of Section 9726(c). **See Commonwealth v. Boyd**, 73 A.3d 1269, 1274 (Pa. Super. 2013). As such, despite suggesting that some sort of on-the-record

inquiry was necessary, Bickel has not provided any reason to conclude that the lower court, who had the benefit of a detailed presentence investigation, was without the information that it needed to ascertain whether he had the ability to pay the fine. Therefore, Bickel's claim is frivolous and does not warrant relief.

Finally, in his *pro se* brief, Bickel has appended what appears to be an additional argument (or series of arguments) that his cellular phone was illegally seized without a warrant. Bickel also asserts that he was denied his right to call his attorney when he requested to do so at some point during police questioning. These claims come after two pages of citationless narrative, and the arguments, themselves, do not contain any references to authority. "We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument." *Milby v. Pote*, 189 A.3d 1065, 1079 (Pa. Super. 2018). Similarly, we "will not act as counsel and will not develop arguments on behalf of an appellant." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007).

As Bickel has failed to provide even a scintilla of record evidence or support to prove these claims of a seemingly constitutional nature, there is no basis to conclude that he is entitled to any relief here, either.

In finding no merit to any of the claims advanced in the *Anders* brief or by Bickel in a *pro se* capacity, we affirm the lower court's order dismissing

Bickel's PCRA petition.[7]

Application to withdraw granted. Order affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/28/2023

---

[7] Relatedly, our independent review of the record, too, has uncovered no additional issues worthy of review or analysis.